**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **In re** | : | Case No. 13-59015 |
| | : | |
| **Designer Furniture Warehouse, LLC** | : | Chapter 11 |
| | : | |
| **Debtor.** | : | Judge C. Kathryn Preston |

**MOTION OF DESIGNER FURNITURE WAREHOUSE, LLC, DEBTOR AND DEBTOR-IN-POSSESSION, FOR INTERIM AND FINAL ORDERS (1) AUTHORIZING THE DEBTOR TO USE CASH COLLATERAL AND TO PROVIDE ADEQUATE PROTECTION; AND (2) SCHEDULING A FINAL HEARING**

Designer Furniture Warehouse, LLC, the Debtor and Debtor-in-Possession in this Chapter 11 case ("Debtor" or "DFW")[1] moves the Court pursuant to the provisions of 11 U.S.C. §§105, 361, and 363, Federal Rules of Bankruptcy Procedure 2002, 4001, 6004 and 9014 and Local Bankruptcy Rule 4001-2 and 6004-1 to (i) enter interim and final orders authorizing the Debtor to use cash collateral and to grant adequate protection upon terms and conditions set forth below; and (ii) schedule an preliminary hearing and a final hearing on this Motion. This Motion is referred to as the "Cash Collateral Motion" or the "Motion".

In support of this Motion, the Debtor respectfully states and represents as follows:

1. No creditors' committee has yet been appointed in this case by the United States Trustee. No trustee or examiner has been appointed in this Chapter 11 case.

2. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§1408 and 1409. This matter is a core proceeding under 28 U.S.C. §157(B)(2).

---

[1] Unless otherwise noted herein, capitalized terms shall have the meaning ascribed to them in the proposed Interim Order attached hereto as Exhibit A.

3. The statutory predicates for the relief requested herein are Sections 105(a), 361, and 363 of the Bankruptcy Code, Federal Bankruptcy Rules 2002, 4001, 6004, and 9014, and Local Bankruptcy Rules 4001-2 and 6004-1.

## BANKRUPTCY RULE 4001(b)(1)(B)
## CONCISE STATEMENT OF RELIEF REQUESTED

4. In accordance with Bankruptcy Rule 4001(b)(1)(B), the Debtor submits that the following is a concise statement of relief requested. Pursuant to § 363 of the Bankruptcy Code, the Debtor requests authority to use cash collateral pursuant to the terms of the Interim Order and a final order to be entered after a final hearing. The Debtor's use of cash collateral will provide working capital to the Debtor for use in its operations in accordance with the Budget attached to the Interim Order. Because immediate and irreparable harm will result if the Debtor cannot use cash collateral pending a final hearing, the Debtor seeks a preliminary hearing before the Court in order to obtain authorization to use cash collateral on an interim basis.

5. Based upon the Debtor's books and records, and its review of the online public records maintained by the Ohio Secretary of State, the Debtor contends that the following parties have security interests in the Debtor's cash collateral: (a) George L. Jenkins, as assignee of Advantage Bank; (b) Adena Ventures, L.P.; (c) George L. Jenkins, individually; (d) Andrew Robinson; (e) Allen Tait; (f) Charles Kidder; (g) Anthony Bennett; and (h) Gerald Fallon (collectively, the "Lien Claimants").

6. The Debtor simply proposes to use the cash collateral, as such term is defined in Section 363(a) of the Bankruptcy Code, and provide adequate protection of the respective security interests of the Lien Claimants by (i) re-granting post-petition liens to each of the Lien Creditors to the same extent, amount, and priority as their respective pre-petition security interests, if any, in cash collateral in existence on the Petition Date, without the necessity of the

re-filing of any UCC Financing Statement or other documents, subject to the liens and rights of Planned Furniture Promotions, Inc. ("PFP") under the terms of the PFP Agreement, as such term is hereinafter defined, (ii) using cash collateral only in accordance with the Budget, and (iii) providing the other protections described in the Interim Order. The proposed duration for the use of cash collateral is thirteen (13) weeks.

## BACKGROUND

7. DFW is a multi-location furniture retail store with eleven (11) locations in Ohio (seven (7) stores), Pennsylvania (three (3) stores) and West Virginia (one (1) store) (the stores are sometimes collectively referred to herein as the "Retail Stores"). DFW sells furniture to the consumer marketplace through the operation of its Retail Stores.

8. DFW is an Ohio limited liability company formed on or about April 22, 2004, and commenced business operations in that same year.

9. As of October 31, 2013, the Debtor's books and records reflect it had assets of approximately $1,354,859 and liabilities of approximately $3,469,423. For the calendar year 2012, the Debtor had sales totaling in excess of $15,797,064.

10. As of the Petition Date, the Debtor had 71 full-time employees and part-time employees.

11. The day-to-day operations of DFW are managed to a large extent by DFW's management team including Charles L. Kidder, Andrew Robinson, and Anthony Bennett. Mr. Kidder and Mr. Robinson have been executive partners in the retail furniture industry for over nineteen (19) years and combined have more than thirty-seven (37) years of experience in retail furniture. Mr. Kidder functions as the president for DFW. He is responsible for field operations, staff, the expansion of retail locations and certain legal functions. Mr. Bennett functions as

DFW's chief financial officer and is responsible for the company's financial, compliance, and administrative operations. Mr. Robinson is responsible for DFW's merchandising, product development, and supply chain management. He also manages DFW's multi-media advertising strategy.

12. The Debtor submits that, as of the commencement of this chapter 11 case, the indebtedness due to the Lien Claimants is secured by security interests in all of the Debtor's present and hereafter acquired assets, including, without limitation, inventory, accounts receivable, equipment, trade fixtures and general intangibles (collectively, the "Prepetition Collateral"). The Debtor is unaware of any other liens in and to the Prepetition Collateral other that the security interests of the Lien Claimants. No property of the Debtor is in the possession or custody of any custodian, public officer, mortgagee, pledgee, assignee of rents or secured creditor or agent for any such person.

13. As of the Petition Date, DFW was in financial distress, and was experiencing significant cash flow restrictions. In the past several years, the retail furniture landscape has been undergoing rapid changes due to significant limitations of credit availability to manufacturers and retail enterprises. This has negatively impacted DFW's ability to operate in a steady and profitable manner, and has hindered DFW's ability to properly flow products based on consumer demands.

14. DFW has been unable to meet its ongoing operating expenses. The threat of losing tenancy of certain of its locations, combined with its inability to continue to obtain sufficient inventory to sell to its customers and to fill existing orders, has compelled DFW to seek relief under chapter 11 of the Bankruptcy Code. During the past several months, DFW explored all available options in an effort to reorganize its financial affairs, including seeking

refinancing, the sale of some assets and/or the liquidation of certain stores and assets. DFW met with bankers, and discussed refinancing with its lenders. The Debtor also attempted to restructure its financial situation by reducing expenses and making other operational adjustments. These adjustments, however, have not produced the required amount of relief, and it is unlikely that the adjustments will result in any sufficient recovery given the current economic conditions. Consequently, the Debtor has determined that its retail business is no longer viable absent the chapter 11 filing.

15. DFW believes that a restructuring its affairs vis-à-vis the chapter 11 bankruptcy process will prove to be the best forum to address its ongoing debt obligations, and maximize the value of its assets. Consequently, DFW has initiated this chapter 11 proceeding to provide a forum and process for such process.

### SUMMARY OF PARTIES WHO HAVE A LIEN OR INTEREST IN THE CASH COLLATERAL OF THE DEBTOR

16. As stated above, the Debtor submits that each of the Lien Claimants has a security interest in the Prepetition Collateral, which includes cash collateral.

17. George L. Jenkins, as assignee of Advantage Bank, has an interest in the Debtor's cash collateral by virtue of the following documents[2]:

1. First Amended and Restated Cognovit Promissory Note dated May 1, 2004;
2. Promissory Note to Advantage Bank dated September 29, 2010;
3. Modification to Promissory Note dated December 6, 2011;
4. Commercial Security Agreement in favor of Advantage Bank dated September 29, 2010;
5. Business Loan Agreement in favor of Advantage Bank dated September 29, 2010;
6. Business Loan Agreement in favor of Advantage Bank dated November 30, 2011;
7. Subordination Agreement dated September 29, 2010;
8. UCC Financing Statement No. 201028601191 filed at the Ohio Secretary of State, October 13, 2010;

---

[2] Debtor notes that concurrent with the filing of this Motion, it filed its "Exhibits to Cash Collateral Motion" containing the documents referenced below.

9. Promissory Note to Advantage Bank in the sum of $300,000 dated September 29, 2010;
10. Business Loan Agreement in favor of Advantage Bank dated September 29, 2010;
11. Commercial Security Agreement to Advantage Bank dated September 29, 2010; and
12. UCC Financing Statement No. 201028601191 filed at the Ohio Secretary of State, October 13, 2010.

18.     Adena Ventures, L.P., George L. Jenkins, individually, Andrew Robinson, Allen Tait, Charles Kidder, Anthony Bennett, and Gerald Fallon have interests, respectively, in the Debtor's cash collateral by virtue of the following documents[3]:

1. Business Loan Agreement in favor of Adena Ventures LP, George L. Jenkins, Andrew Robinson, Charles L. Kidder, Anthony T. Bennett, and Gerald Fallon dated December 31, 2012;
2. Subordination Agreement dated December 31, 2012;
3. Sierra Novo and Designer Furniture Warehouse LLC Security, Collateral Agency and Inter-Creditor Agreement dated December 31, 2012;
4. Convertible Promissory Note to Adena Ventures LP dated December 31, 2012;
5. Convertible Promissory Note to Andrew Robinson dated December 31, 2012;
6. Convertible Promissory Note in favor of Anthony Bennett dated December 31, 2012;
7. Convertible Promissory Note to Charles L. Kidder dated December 31, 2012;
8. Convertible Promissory Note to George L. Jenkins dated December 31, 2012;
9. Convertible Promissory Note to Gerald Fallon dated December 31, 2012;
10. Warrant to Purchase Preferred B Membership Units of Sierra Novo LLC and Pursuant to the Convertible Promissory Note dated December 31, 2012;
11. UCC Financing Statement No. 201300700210 in favor of Adena Ventures LP filed January 4, 2013;
12. UCC Financing Statement No. 201300700213 in favor of Andrew Robinson filed January 4, 2013;
13. UCC Financing Statement No. 201300700214 in favor of Anthony Bennett recorded January 4, 2013;
14. UCC Financing Statement No. 201300700211 in favor of Charles Kidder filed January 4, 2013;
15. UCC Financing Statement No. 201232400124 in favor of George Jenkins dated November 16, 2012;
16. UCC Financing Statement No. 201300700212 in favor of George Jenkins filed January 4, 2013;
17. UCC Financing Statement No. 201300700417 in favor of Gerald Fallon filed January 4, 2013;
18. First Amended Convertible Promissory Note in favor of Adena Ventures LP dated September 30, 2013;
19. First Amended Convertible Promissory Note in favor of Andrew Robinson dated September 30, 2013;

---

[3] See, Exhibits to Cash Collateral Motion.

20. First Amended Convertible Promissory Note in favor of Anthony Bennett dated September 30, 2013;
21. First Amended Convertible Promissory Note in favor of Charles Kidder dated September 30, 2013;
22. First Amended Convertible Promissory Note in favor of George L. Jenkins dated September 30, 2013; and
23. First Amended Convertible Promissory Note in favor of Gerald Fallon dated September 30, 2013.

## **PURPOSE OF CHAPTER 11 BANKRUPTCY CASE**

19. It is Debtor's intention to address its financial difficulties by and through the closing of the majority of its store locations and the liquidation of a substantial portion of its inventory and other assets, through store closures and/or "going out of business" augmented liquidation events, designed to provide maximum recovery for the Debtor's creditor constituents.

## **THE PFP TRANSACTION**

20. The Debtor is proposing that the store closing augmented liquidation events be accomplished with the assistance of PFP acting as Debtor's exclusive agent for conducting "going out of business", "bankruptcy liquidation", "store closing", and similar themed sales. In that regard, the Debtor is filing contemporaneously herewith its *Motion of Designer Furniture Warehouse, LLC, Debtor and Debtor in Possession, for Entry of an Order (A) Authorizing Debtor to Assume Pre-Petition Executory Contracts with Planned Furniture Promotions, Inc., (B) Authorizing Debtor to Conduct a Going Out of Business Sale, and (C) Granting Other Relief* (the "PFP Motion"). As more fully detailed in the PFP Motion, under the PFP Agreement (as such term is defined in the PFP Motion) PFP will be granted a first priority security interest in certain of the Debtor's assets, including the Company Inventory (as defined in the PFP Agreement), the Other Inventory (as defined in the PFP Agreement) and proceeds thereof and accounts of and to all of the foregoing, including, but not limited to, proceeds in the Sale Account (as defined in the PFP Agreement) and Backlog

Account (as defined in the PFP Agreement) (subject to the subordinate Liens of the Lien Claimants to the extent of the Backlog Amount in the Backlog Account in accordance with the PFP Agreement) (collectively, the "PFP Collateral").  PFP will be further entitled to retain all proceeds of the Sale (excluding Pre-Sale Orders) free and clear of liens.  In exchange, the Debtor will receive from PFP, *inter alia*, an amount equal to one hundred percent (100%) of the "Company Inventory Landed Cost" plus twenty-five (25%) of the "Other Inventory Landed Cost", which collective amount is defined in the PFP Motion as the "Guaranteed Amount."  Under the PFP Agreement the Debtor will also receive a $125,000 "Additional Inventory Fee."  Any and all security interests of the Lien Claimants in and against the PFP Collateral (to the extent such PFP Collateral constitutes Prepetition Collateral) shall be released, other than as they attach to the Pre-Sale Orders and proceeds thereof, subject to the liens and rights of PFP all as is specified in the PFP Agreement.

## BASIS FOR RELIEF

21.     As described above, the Debtor contends that the Lien Claimants, respectively, have security interests encumbering the Prepetition Collateral.  Each of the pre-petition secured claims has been identified and summarized above, and copies of the documents under which the Lien Claimants claim these security interests are filed with the Court as the "Exhibits to Cash Collateral Motion", in satisfaction of the provisions of Local Bankruptcy Rule 4001-2.

22.     The Debtor's assets and the proceeds thereof now owned or hereafter acquired by the Debtor, including the Debtor' cash, as well as its rights under the PFP Agreement, may constitute cash collateral within the meaning of Section 363(a) of the Bankruptcy Code.  The Lien Claimants, respectively, have interests in the Debtor's cash collateral.

23. The Debtor intends to finance the operations of its business and certain of its administrative fees during this Chapter 11 case through the continued use of cash collateral in the form proceeds of inventory from stores not included in the PFP transaction, as well as the proceeds represented by the Guaranteed Amount and the Additional Inventory Fee. A copy of the proposed Interim Order for use of Cash Collateral is attached hereto as <u>Exhibit A</u>. The Debtor proposes to use cash collateral to fund general business needs, including the payment of its payroll, taxes, utilities, the purchase of necessary supplies and services, to replace its inventory, and to pay fees and expenses related to this Chapter 11 case, including the fees of professionals. The Debtor's use of cash collateral would be limited to the line items of expense categories set forth in the budget ("the Budget"), which is attached to the proposed Interim Order. The Debtor intends to grant the Lien Claimants adequate protection with respect to their respective interests in the cash collateral, by granting such Lien Claimants a replacement liens in post-petition cash collateral, to the extent of, and in the same priority as, any valid and subsisting liens or interest held by such Lien Claimants in cash collateral as of the Petition Date, subject and subordinate, however, to the liens and interests granted to PFP under the PFP Agreement.

24. Accordingly, the Debtor requests that the Court:

    (a) enter interim and final orders authorizing the Debtor to use the cash collateral pursuant to Section 361, 362, and 363 of the Bankruptcy Code, and provide adequate protection to the Lien Claimants by re-granting post-petition liens to the same extent, amount, and priority as they existed pre-petition without the necessity of the re-filing of any UCC Financing Statement or other document (subject and subordinate, however, to the liens and interests granted to PFP under the PFP Agreement), and by ensuring that cash collateral will be used by the Debtor only in accordance with the line items of expense categories set forth in the Budget, and by providing the other protections described in the Interim Order; and

  (b) schedule, pursuant to Federal Rule of Bankruptcy Procedure 4001 and Local Bankruptcy Rule 4001-2, an Interim Hearing on this Motion and to enter an Interim Order in substantially the same form as is attached as Exhibit A; and

  (c) schedule, pursuant to Federal Rule of Bankruptcy Procedure 4001 and Local Bankruptcy Rule 4001-2, on not less than fourteen (14) days' notice of the entry of the Interim Order, a final hearing ("the Final Hearing") authorizing the use of Cash Collateral on a final basis.

  25. The Debtor does not have sufficient available sources of working capital and financing to operate its business (and fund the chapter 11 fees and expenses) without the use of the cash collateral. The Debtor has an immediate need to use the cash collateral to, among other things, purchase various products from its vendors and pay other routine operating expenses, such as payroll, lease payments, taxes, or other obligations, and to pay fees and expenses related to this Chapter 11 case, including the fees of professionals. In the absence of immediate authorization of the use of the cash collateral, the Debtor cannot continue to operate its business (albeit on a limited basis pending approval of the PFP Motion), and immediate and irreparable harm to the Debtor and this estate will occur.

  26. In addition, access to its cash collateral will provide the Debtor's customers and vendors with the requisite security that the Debtor will be able to continue conducting its business on a limited basis at the locations not covered by the PFP transaction, without interruption, and will ensure that, upon approval of the PFP Motion by the Court, the PFP transaction can be implemented and maximum value of the Debtor's inventory and other assets consumed thereunder can be realized.

  27. The Debtor notes that is only seeking authority to use cash collateral and that it is not herein seeking the authority to obtain post-petition secured financing. In the ordinary course

of business, the Debtor intends to fund its purchase of goods, and to pay for such goods through the use of cash collateral.

28.     Local Rule 4001-2 requires that certain provisions contained in the Interim Order be highlighted ("the Highlighted Provisions"), and that the Debtor must provide justification for the inclusion of such Highlighted Provisions. The Debtor is only proposing to use cash collateral and submits that the proposed Interim Order does *not* contain *any* of the provisions that would otherwise need to be highlighted under this Local Rule 4001-2.  Accordingly, there being no provisions to highlight, there is no need for, and the Debtor does not attach, a checklist in the form that would otherwise would be required by Local Rule 4001-2(a)(1) and (3) identifying the location of each Highlighted Provision.

29.     The Debtor's Budget demonstrates that the Debtor requires use of the cash collateral to pay present operating expense, including payroll, and to pay vendors to ensure a continued supply of services and material essential to the Debtor's continued viability. If unable to use the cash collateral, the Debtor would be unable to operate its business.

30.     Under Section 363(c)(2) of the Bankruptcy Code, the Debtor may not use cash collateral without the consent of each entity that has an interest in cash collateral or by the authority granted by the Court. Section 363(e) of the Bankruptcy Code provides that on request of an entity that has an interest in property to be used by a debtor, the Court shall prohibit or condition such use as necessary to provide adequate protection of such interest. The Debtor submits that the adequate protection to be provided to the Lien Claimants is sufficient to approve the use of the cash collateral under Section 363 of the Bankruptcy Code.

31.     The determination of adequate protection is a fact-specific inquiry to be decided on a case-by-case basis. See <u>In re Mosello</u>, 195 B.R. 277, 288 (Bankr. S.D.N.Y. 1996); <u>In re</u>

O'Connor, 808 F2d 1393, 1396-97 (10th Cir. 1987). Adequate protection can be provided in a number of ways (see, e.g., 11 U.S.C. §361), with the focus being to protect a secured creditor from diminution in the value of its interest in the collateral during the period of use. See In re 495 Cent. Park Ave. Corp., 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992) (purpose of adequate protection is "to be safeguard the secured creditor from diminution in the value of its interest during the Chapter 11 reorganization"); In re Beker Indus. Corp., 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986). The Lien Claimants are adequately protected because their liens will be re-granted in and to the post-petition assets to the extent of the validity and priority of their pre-petition liens (subject and subordinate to the liens and rights of PFP under the PFP Agreement). These provisions are a traditional means of provide adequate protection.

32. Adequate protection is also provided to the Lien Claimants by the Debtor only spending cash collateral in accordance with the line items of expense categories set forth in the Budget and by the reporting that the Debtor will make to the Lien Claimants.

33. Bankruptcy Rules 4002(b) and (c) provide that a final hearing on a motion to use cash collateral pursuant to Section 363 of the Bankruptcy Code and to obtain credit pursuant to Section 364 of the Bankruptcy Code may not be commenced earlier than fourteen (14) days after the service of such motion. Upon request, however, the Court is empowered to conduct a preliminary expedited hearing on the Motion and authorize the use of cash collateral and the obtaining of credit to the extent necessary to avoid immediate and irreparable harm to the Debtor's estate.

34. The Debtor requires the immediate use of cash collateral to pay present operating expenses, including but not limited to payroll, to pay vendors to ensure a continued supply of goods essential to the Debtor's continued viability, utility providers, and taxes, as well as to pay

fees and expenses related to this Chapter 11 case, including the fees of professionals. Thus, the use of the cash collateral is necessary to avoid immediate and irreparable damage to the Debtor's estate, and the Debtor states that interim relief pursuant to Bankruptcy Rule 4001 is appropriate.

35. Therefore, the Debtor requests that the Court schedule and conduct an interim hearing to consider entry of the proposed Interim Order (a) authorizing the Debtor from and after the entry of the Interim Order until the final hearing to utilize the cash collateral as provided in the proposed Interim Order, and (b) granting the adequate protection as provided in the proposed Interim Order. This relief will enable the Debtor to operate its business in the ordinary course and avoid immediate and irreparable harm and prejudice to its estate and all parties in interest, pending the final hearing.

## **NOTICE**

36. A copy of this Motion has been served on the parties on the attached service list in the manner indicated. The service list includes the following parties:

    (i)    the Office of the United States Trustee;
    (ii)    the Debtor's twenty (20) largest unsecured creditors as identified in its chapter 11 filing;
    (iii)    the Lien Claimants; and
    (iv)    PFP.

37. The Debtor will also serve a copy of any Order granting a preliminary hearing on the request in this Motion that the Interim Order be entered on those parties listed in paragraph 29 above by overnight express mail. Under the circumstances, notice of this Motion and of any preliminary hearing on this Motion is sufficient and no further notice should be required.

38. The Debtor further respectfully request that the Court schedule the Final Hearing and authorize the Debtor to serve a copy of the signed Interim Order (which fixes the time and date for the filing of objections) by first-class mail upon the same parties served with this Motion

and any party who files a request for notice in these Chapter 11 cases pursuant to Bankruptcy Rule 2002 prior to the date set forth in the Interim Order for service of notice of the Final Hearing. The Debtor requests that the Court consider such notice of the Final Hearing to be sufficient notice under Bankruptcy Rule 4001 and Local Rule 4001-2.

### **WAIVER OF REQUIREMENT TO FILE MEMORANDUM OF LAW**

39. The Debtor states that this Motion does not present any novel issues of law requiring briefing and that the Motion adequately describes the issues presented. Therefore, the Debtor requests that the Court waive the requirement pursuant to Local Rule 9013-1(a) for a memorandum in support of this Motion.

### **NO PRIOR REQUEST**

40. No previous request for the relief sought herein has been made to this Court or any other court.

For the various reasons set forth in this Motion, the Debtor states that cause exists for the Motion to be granted.

Respectfully submitted,

/s/ J. Matthew Fisher
J. Matthew Fisher         (0067192)
Thomas R. Allen           (0017513)
Erin L. Pfefferle         (0084984)
Allen Kuehnle Stovall & Neuman LLP
17 South High Street, Suite 1220
Columbus, OH  43215
Telephone:    614-221-8500
Facsimile:    614-221-5988
E-mail:       fisher@aksnlaw.com
              allen@aksnlaw.com
              pfefferle@aksnlaw.com
*Proposed Counsel for Designer Furniture Warehouse, LLC*